## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.  05-402 (PLF)** |
| | : | |
| **v.** | : | |
| | : | |
| **DANIEL WILLIAMS,** | : | |
| | : | |
| **Defendant** | : | |
| | : | |
| _____ | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia,  respectfully submits this memorandum in aid of sentencing the defendant, DANIEL WILLIAMS, in the above-captioned case.

**I.    BACKGROUND**

The defendant was charged in a two-count Information with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of Title 18, United States Code, Section 922(g)(1), and Using, Carrying, and Possessing a Firearm During a Drug Trafficking Offense, in violation of Title 18, United States Code, Section 924(c)(1).

On December 20, 2005, pursuant to a written plea agreement, the defendant, Mr. Williams pled guilty to Count One of the Information, Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for One Year or More.  At that time, he admitted to the following:

On October 13, 2005, members of the Metropolitan Police Department observed the

1

defendant traveling in a vehicle in the 2600 block of Martin Luther King Avenue, S.E., Washington, DC, with a missing passenger-side mirror. A traffic stop was conducted on the vehicle. The defendant was the driver and only occupant of the vehicle. When officers approached the vehicle, they smelled marijuana coming from the car and noticed two black plastic bags on the front passenger floor. The defendant was asked to step out of the vehicle and recovered from his person was a .40 caliber pistol. A search of the black bags revealed a total of 6 sandwich bags containing a green weed substance which field-tested positive for THC. The defendant admitted officers that he was in possession of the pistol and drugs.

At the time, the defendant had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in Superior Court Criminal Case No. F4676-86.

## II.    SENTENCING CALCULATION

### A    Statutory Minimums and Maximums

Pursuant to Title 18, United States Code, Sections 922 and 924, Count One carries a maximum sentence of 10 years imprisonment, a $250,000 fine and up to three years of supervised release.

### B.    Sentencing Guidelines Calculation

The initial Presentence Report (PSR) calculated the defendant's total offense level at 11. See PSR ¶ 21 (Feb. 2, 2006). (This calculation contemplated a three level departure for acceptance of responsibility.) On February 15, 2006, in its Receipt and Acknowledgment of the PSR, the government submitted to the probation office that the defendant's base offense level should be increased by four levels under USSG 2K2.1(b)(5) for possessing a firearm in connection with another felony offense. At that time, government counsel believed the absence

of the four-level increase rendered the PSR inaccurate. The government's recommendation was incorporated into the revised Presentence Investigation Report, dated March 1, 2006. As a consequence, the revised PSR calculates the defendant's total offense level at 15. See PSR at ¶ 21 (March 1, 2006). It also calculates the defendant's criminal history at III. Accordingly, the PSR calculates the guideline range for the defendant at 24 to 30 months. See PSR ¶ at 48 (March 1, 2006).

Since the revised PSR was issued on March 1, 2006, new government counsel has been assigned to this case. Upon review and consideration of the file and the record in this case, the government now takes the position that the four-level enhancement under USSG 2K2.1(b)(5) is not applicable. In order for the enhancement to apply, the government must prove that the defendant possessed the firearm in connection with another felony offense–drug trafficking in this case. At this time, the government is not in a position to prove that the defendant's possession of marijuana in this case constituted a felony offense. Accordingly, the defendant's base offense level should not be increased by four levels.

Rather, his total offense level should be calculated at 12, for the following reasons. His base offense level is 14 because at the time of the instant offense he had sustained a felony conviction. See USSG 2K2.1(a)(6)(A). His adjusted offense level is 14 because no specific offense characteristics apply. He receives a two-point reduction for acceptance of responsibility under USSG 3E1.1, resulting in a total offense level of 12. With a total offense level of 12 and criminal history category of III, the defendant's guideline range should be calculated at 15 to 21 months.

**III.    GOVERNMENT'S RECOMMENDATIONS**

3

A.     <u>Acceptance of Responsibility</u>

The government agrees that the defendant's base offense level should be decreased by two levels pursuant to Section 3E1.1 of the Sentencing Guidelines.  He entered a guilty plea, and clearly demonstrated acceptance of responsibility for this offense.  In the plea agreement, the government agreed that the defendant's base offense level should be reduced by three levels under USSG 3E1.1.  The defendant, however, is not eligible to receive an additional one-level reduction under that guideline because he did not start with an offense level of 16 or greater.  Accordingly, the government can agree only that his base offense level be reduced by two levels.

B.     <u>Application of the Federal Guidelines post-Booker</u>

Pursuant to the plea agreement between the government and the defendant, it is the government's position that the Court should impose a sentence at the low end of the guidelines range.  In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004).  As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory,  Title 18, United States Code, Section 3553(b)(1).  <u>Booker</u>, 125 S. Ct. at 756.  However, the Court expressly refused to invalidate the Guidelines in their entirety.  To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime.  Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in

4

the Guidelines.  <u>See</u> 18 U.S.C. Section 3554(c)(2).  The sentence will then be subject to review

by courts of appeals for "reasonableness."  <u>Id.</u> at 769.

      In <u>Booker</u>'s wake, this Court must continue to resolve disputed questions of fact and law

and correctly calculate a defendant's sentence under the existing Sentencing Guidelines.  <u>See</u>

Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report

or determine that resolution not necessary to sentencing).  "The district courts, while not bound

to apply the Guidelines, must consult those Guidelines and take them into account when

sentencing."  <u>Booker</u>, 125 S. Ct. at 767 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)).

In light of this mandate – and the continued requirement of written explanations for sentences

that fall outside of the range called for by the Guidelines and the new standard of

"reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is

reasonable <u>per se</u>.  Not only is a sentence within the Guideline range reasonable <u>per se</u>, but it also

accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair

and uniform sentences.

      The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes,

represent the distillation of two decades of careful study of sentencing practices across the

country, and correlate as well to the varying severity of crimes as defined by Congress.  The

Guidelines, consisting of offense characteristics and various grounds for departure, address the

considerations relevant to sentencing, as articulated in 18 U.S.C. Section 3553(a), such as "the

nature and circumstances of the offense and the history and characteristics of the defendant"; "the

need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect

for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to

criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Indeed, the Sentencing Commission formulated the Guidelines only after initially canvassing prior sentencing practice and attempting to identify and assign weights to all the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence. See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. Section 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). Moreover, since the Guidelines were adopted, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 125 S. Ct. at 766; see id. at 767 (Sentencing Commission will continue "collecting information about actual district court sentencing decisions  . . . and revising the Guidelines accordingly").

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court. Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences

6

be based on the offender's actual conduct and history.  See, e.g., id. at 761 (majority opinion of

Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing

system in the direction of increased uniformity."); id. at 759 (same) ("Congress' basic statutory

goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial

efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of

conviction."); id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing

disparity, which Congress determined was chiefly the result of a discretionary sentencing regime,

was unquestionably Congress' principal aim."); id. at 789 (dissenting opinion of Scalia, J.) ("the

primary objective of the Act was to reduce sentencing disparity.").  Since the Guidelines

currently represent the only extant benchmark to encourage uniformity and thus the only tool to

implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are

currently the only mechanism available to implement Congress' basic statutory goals.

     Booker, to be sure, departs from the prior practice of automatic reversal that would have

accompanied the failure to sentence a defendant within the Guidelines.  Such a sentence will now

be reviewed instead for its "reasonableness."  See Booker, 125 S. Ct. at 764.  Nevertheless, the

Guidelines -- resulting as they do from years of study of sentencing practices, crime statistics,

national crime policy, and consideration of the factors that inform sentencing, see 18 U.S.C.

Section 3553(a) – provide the most concrete yardstick against which to measure what would be

unreasonable.  Booker not only prevents courts from substituting their individual judgment about

the appropriateness of the Guidelines range without explaining with specificity their reasoning,

Booker also continues to subject the explanation of the decision to sentence outside of the

correctly calculated range to a court of appeals reasonableness review.  See 18 U.S.C. Section

3553(c) (mandating consideration of the Guidelines); 18 U.S.C. Section 3553(c)(2) (mandating

written explanations for imposing a sentence outside of the applicable Guideline range); 18

U.S.C. Section 3742(f)(1) (mandating court of appeals to set aside a sentence imposed as a result

of an incorrect application of the Guidelines); 18 U.S.C. Section 3742(f)(2) (mandating court of

appeals to set aside a sentence outside the Guidelines range when the district court fails to

provide a required statement of reasons in the judgment and commitment order).

       Fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing

and should occur absent unusual circumstances.  This is so, said the court in United States v.

Wilson, 350 F. Supp. 2d 910 (D. Utah, 2005) – the day after Booker was decided – because the

Guidelines represent the product of an expert commission, that has studied the sentencing

process at great length, under the specific mandate of Congress, to fashion recommended

sentences that carry out the purposes defined by Congress.  The resulting Guidelines, Wilson

held, plainly reflect the public's will, as expressed by their democratically elected

representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust

them to congressional preference.  Wilson further observed that guided sentencing appears to

have had a positive impact in deterring criminal conduct throughout the country, and thus serves

the purpose of deterrence as well as punishment and fairness.  For all of these reasons, Judge

Cassell determined that "the court will give heavy weight to the Guidelines in determining an

appropriate sentence.  In the exercise of its discretion, the court will only depart from those

Guidelines in unusual cases for clearly identified and persuasive reasons."  Id. at 912.  A non-

Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent –

in particular, the overriding concern with uniformity and the prevention of unfair disparities for

similarly-situated defendants.

In this case, as explained further below, no unusual circumstances exist that warrant an exception to the preference for guideline sentencing. Therefore, the government respectfully recommends that the Court sentence the defendant within the Federal Guidelines range.

      C.     <u>Basis for Government's Sentencing Recommendation</u>

A guideline sentence is necessary in view of the factors set forth in Title 18, United States Code, Section 3553(a). Specifically, a guideline sentence is necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to protect the community.

A sentence of at least fifteen months is necessary to reflect the seriousness of the offense in this case because the defendant has already received a substantial benefit from this plea, and all the leniency he should receive is encompassed in the plea. The defendant received a decrease in his offense level as a result of his acceptance of responsibility, and the government agreed to ask for the low end of the applicable guidelines range. Moreover, the government is not pursuing a four-level enhancement for possessing a firearm in connection with another felony offense, discussed above, which would have resulted in a guideline range of 24 to 30 months–a full nine months more than the government is now recommending. Thus, no additional leniency is appropriate in light of the seriousness of the offense.

The guideline sentence is necessary to afford adequate deterrence to criminal conduct and to promote respect for the law. The defendant's criminal history spans twenty-one years, and has continued throughout his adult life. It is serious, escalating in dangerousness, and it is wide-ranging–from convictions on drug offenses to a conviction for auto theft, and now a conviction

for a gun offense.  The defendant has four prior drug convictions, including a conviction for distribution of PCP.  He has received repeated opportunities to reform, but has not done so.  Rather, despite repeated chances, advancing in age (he is 41 years old), and even serving time for past offenses, the defendant has not refrained from engaging in criminal activity.  Indeed the evidence in this case shows that he refuses to distance himself from drugs, despite having served time for drug offenses.  Far more disturbing, however, is the escalation of the defendant's criminal activity, even to carrying a gun.  The defendant's criminal activity is becoming increasingly dangerous as he gets older.  Therefore, a guideline sentence is necessary to deter him from this trend, and to promote some respect for the law.

Finally, the guideline sentence is necessary to protect the public.  The defendant has sold PCP, and served time, but nevertheless was recently carrying a loaded gun.  Nor was he simply transporting a gun in his car.  The defendant was driving around with a loaded gun in his waistband, where he would have easy access to it.  He is not a kid trying to look like a gangster on television; the defendant is forty-one years old.  Thus, it cannot be said that the weapon was for mere appearances.  In a city where guns are illegal, and gun violence so damaging, such behavior must not be tolerated.

IV.     **<u>CONCLUSION</u>**

Wherefore, the government respectfully requests that the Court sentence the defendant to

15 months of incarceration.


                                        Respectfully submitted,

                                        KENNETH L. WAINSTEIN.
                                        United States Attorney
                                        Bar No. 451058


                                        _____
                                        BRIAN P. ROGERS
                                        Special Assistant United States Attorney
                                        Federal Major Crimes Section, Maryland Bar
                                        555 4th Street, N.W., Room 4712
                                        Washington, DC 20530
                                        (202) 616-1478